UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:14-cv-00507-JDL |
| DEBRA L. NELSON, as | ) | |
| Personal Representative of | ) | |
| the Estate of Eric R. Nelson, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case is a diversity action between plaintiff Nationstar Mortgage, LLC ("Nationstar") and defendants Debra Nelson and Susan Schuyler, in their capacities as Personal Representatives of the Estate of Eric R. Nelson (collectively, the "Estate").[1]  *See* ECF No. 1 at 1.  Nationstar has sued the Estate for breach of promissory note and other claims arising out of the alleged nonpayment of a mortgage and promissory note.  *See id*. at 6-15.  The Estate has moved for summary judgment, alleging that the claim preclusion doctrine of *res judicata* bars Nationstar's complaint.  ECF No. 50 at 8-14.  Specifically, the Estate contends that it has previously prevailed against Nationstar in a state court case concerning the same mortgage and promissory note at issue here.  *Id*. at 9-12.  For the reasons explained below, I grant the Estate's motion.

---

[1] The Estate has filed a counterclaim for slander of title.  ECF No. 5 at 15-16.  The Estate's counterclaim is not at issue in its Motion for Summary Judgment and is not addressed in this order.

## I. FACTUAL BACKGROUND

According to Nationstar, in 2007, Eric Nelson executed a mortgage and accompanying $225,000 promissory note (the "Note") on property Nelson owned located in Biddeford with First Magnus Financial Corporation. ECF No. 1 at 3. The mortgage was subsequently assigned to Aurora Loan Services, LLC ("Aurora"), and ultimately to Nationstar. *Id.* at 4-5. Nelson died in 2008. *Id.* at 4. Nationstar alleges that his Estate has failed to make mortgage payments since December 1, 2008. *Id.*

On September 4, 2009, Nationstar's counsel, writing on behalf of Aurora, sent a Notice of Mortgagor's Right to Cure (the "Right to Cure Notice") to the Estate, informing it that the loan was "in default for failure to make payments of principal and interest when due." ECF No. 51-7 at 57. The notice itemized all past due amounts, stated that the total amount due in order to cure the Estate's default was $18,155.40, and further stated that "[y]ou have the right to cure the default within 35 days of receipt of this notice[.]" *Id.* at 58. The letter also stated that "[i]f the default is not cured within this time-frame, Aurora Loan Services, LLC shall exercise it[s] right to accelerate payment of this loan." *Id.*

In November 2009, Aurora filed a complaint of foreclosure against the Estate in the Biddeford District Court (the "State Court Complaint"). ECF No. 51-1. The complaint asserted that as of October 31, 2009, the amount due to Aurora under the terms of the mortgage and note included a principal balance of $221,248.60 and accrued interest of $16,040.52, which, together with other fees and charges owed, resulted in a total amount due of $246,192.29. *Id.* at 2-3.

Aurora requested that the court "[d]etermine that there has been a breach of

condition in the Plaintiff's mortgage and promissory note[,]" and "[d]etermine the amount due on said mortgage and promissory note[.]" *Id.* at 3. Following assignment of the mortgage to Nationstar, Nationstar was substituted for Aurora as the plaintiff. ECF No. 51-3. In addition, the complaint was amended to add a second count to assert a claim of reformation by mutual mistake. ECF No. 51-3 at 2.

A trial was held in the Biddeford District Court in November 2013. ECF No. 51 at 3, ¶ 10; ECF No. 54 at 2, ¶ 10. Nationstar's sole witness was Brian White, a litigation resolution analyst employed by Nationstar. ECF No. 51 at 3, ¶ 11; ECF No. 54 at 2, ¶ 11. Nationstar sought to introduce the promissory note into evidence by having White testify that the business records of First Magnus and Aurora had been integrated and incorporated into Nationstar's own business records. ECF No. 51-11 at 11. This attempt failed when the court sustained the Estate's hearsay objection on the basis that the testimony failed to establish the business records exception to the rule against hearsay. ECF No. 51-7 at 107-110. Nationstar also attempted to introduce the mortgage into evidence via White's testimony. ECF No. 51 at 3, ¶ 13; ECF No. 54 at 2, ¶ 13. Although the court initially overruled the Estate's hearsay objection, ECF No. 51-7 at 113, it ultimately sustained the objection and the mortgage was withdrawn from evidence for failure to satisfy the business records exception, *id.* at 121. At the conclusion of White's testimony, Nationstar rested its case.[2] *See* ECF No. 51-7 at 152. The Estate then moved for a directed judgment, *id.,* which the court

---

[2] Nationstar abandoned its claim for Reformation of the Mortgage. *See* ECF No. 51 at 7, ¶ 27 (citing ECF No. 51-11 at 12 n.2) ("In the interests of judicial economy, Plaintiff did not attempt to admit all documents available to prove Plaintiff's Count 2, reformation of mortgage claim."); ECF No. 54 at 3, ¶ 27.

granted, *id*. at 161; *see also* M.R. Civ. P. 50(d).   The judgment stated in part:

"Judgment for the Defendants on the Plaintiff's Complaint for foreclosure."  ECF No.

51-8 at 1.

On appeal, the Maine Law Court affirmed the judgment in a Memorandum of

Decision issued in September 2014.  ECF No. 51-14.  The Memorandum of Decision,

which is central to the issue presented here, states, in relevant part:

> [T]he trial court did not err in excluding some of Nationstar's witness
> testimony and documents for failure to demonstrate compliance with the
> business records exception to the hearsay rule pursuant to M.R. Evid.
> 803(6).  Further, Nationstar did not demonstrate that it had standing to
> seek foreclosure of the mortgage. The entry is: Judgment affirmed.

*Id*. (citations omitted).

Nationstar filed suit in this court in November 2014.  *See* ECF No. 1 at 17.  The

complaint contains six counts – quiet title, breach of note, breach of contract,

quantum meruit, unjust enrichment, and reformation of mortgage.  *Id*. at 6-15.

Nationstar also seeks a writ of assistance pursuant to the All Writs Act, 28 U.S.C. §

1651.  *Id*. at 13-14.  The Estate has moved for summary judgment contending that

Nationstar's claims are barred by the doctrine of *res judicata*.

## II. SUMMARY JUDGMENT STANDARD

### A.   Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to summary

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Ahmed v. Johnson*, 752 F.3d

490, 495 (1st Cir. 2014).  In making that determination, a court must view the

evidence in the light most favorable to the non-moving party.  *Johnson v. Univ. of*

*P.R.*, 714 F.3d 48, 52 (1st Cir. 2013). "[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citations and quotations omitted).

**B.      Local Rule 56**

Local Rule 56 defines the evidence that this court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment. First, the moving party must file a statement of material facts that it claims are not in dispute, with each fact presented in a numbered paragraph and supported by a specific citation to the record. *See* Loc. R. 56(b).

Second, the non-moving party must submit its own short and concise statement of material facts in which it admits, denies, or qualifies the facts alleged by the moving party, making sure to reference each numbered paragraph of the moving party's statement and to support each denial or qualification with a specific citation to the record. Loc. R. 56(c). The non-moving party may also include its own statement of additional facts that it contends are not in dispute. *Id.* These additional facts must also be presented in numbered paragraphs and be supported by a specific citation to the record. *Id.*

Third, the moving party must then submit a reply statement of material facts in which it admits, denies, or qualifies the non-moving party's additional facts, if any. Loc. R. 56(d). The reply statement must reference each numbered paragraph of the non-moving party's statement of additional facts and each denial or qualification must be supported by a specific citation to the record. *Id.*

The court may disregard any statement of fact that is not supported by a specific citation to the record, Loc. R. 56(f), and the court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."  *Id.*; *see also, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).  Properly supported facts that are contained in a statement of material or additional facts are deemed admitted unless properly controverted.  Loc. R. 56(f).

### III. LEGAL ANALYSIS

Under the claim preclusion doctrine of *res judicata*, the Biddeford District Court's judgment bars Nationstar's pursuit of the instant case if: (1) the same parties or their privies were involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in this action were, or might have been, litigated in the first action.  *Wilmington Trust Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371 (quoting *Guardianship of Jewel M.,* 2010 ME 80, ¶ 40, 2 A.3d 301).  There is no dispute that the same parties or their privies are involved in both actions, and therefore, the *res judicata* analysis turns on the second and third elements.  *See* ECF No. 53 at 1-2.

A.      **Was a Valid Final Judgment Entered in the State Court Action?**

Before examining the parties' arguments, a brief overview of the Maine Law Court's opinions in the *Bank of America, N.A. v. Greenleaf* cases is necessary.  In *Bank of America, N.A. v. Greenleaf,* 2014 ME 89, 96 A.3d 700 ("*Greenleaf I*"), the court held that the plaintiff bank lacked standing to seek foreclosure on a mortgage and accompanying promissory note because it had acquired its interest in the defendants'

6

mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS")—"a nominee that possessed no interest in the mortgage other than the right to record it." *Bank of America, N.A. v. Greenleaf* ("*Greenleaf II*"), 2015 ME 127, ¶ 4, 124 A.3d 1122 (citing *Greenleaf I* at ¶¶ 15-17). The court vacated the lower court's judgment of foreclosure. *Greenleaf I,* 2014 ME 89 (mandate reflecting vacation of district court's judgment).

Following the remand in *Greenleaf I,* the trial court issued an order dismissing the plaintiff bank's complaint without prejudice. *Greenleaf II,* 2015 ME 127, ¶ 1. The defendant appealed the dismissal, arguing that because the bank's case had been tried to completion, the district court should have entered a judgment in its favor and not merely dismissed the complaint. *Id.* at ¶ 6. The defendant's appeal resulted in the Maine Law Court's opinion in *Greenleaf II,* 2015 ME 127, in which it affirmed the district court's dismissal and held that "[a] plaintiff's lack of standing renders that plaintiff's complaint nonjusticiable—i.e., incapable of judicial resolution[,]" and therefore, "the court could not have entered a judgment on remand addressing the merits of the Bank's foreclosure claim because the Bank failed to show the minimum interest that is a predicate to bringing that claim in the first place." *Id.* at ¶¶ 8, 9.

Nationstar, citing *Greenleaf I,* 2014 ME 89, ¶¶ 8, 12, argues that the reference to Nationstar's failure to demonstrate its standing to foreclose in the Law Court's September 2014 Memorandum of Decision renders the trial court's judgment ineffective for purposes of *res judicata* because a court cannot decide the merits of the case where the plaintiff lacks standing. ECF No. 53 at 2-3. The Estate, citing *Greenleaf II*, 2015 ME 127, ¶¶ 8, 9, argues that if the Law Court had based its decision

on a lack of standing, then its Memorandum of Decision could not and would not have affirmed the trial court's judgment. ECF No. 50 at 11. Instead, the Estate contends, the case would have been remanded with instructions that the case be dismissed without prejudice. *Id.* The Estate also emphasizes that standing was not an issue raised in Nationstar's Notice of Appeal or in the parties' appellate briefs, ECF No. 50 at 4-5, and that, therefore, the Memorandum of Decision's reference to Nationstar's lack of standing is noncontrolling *dicta, see id.* at 11.

The Maine Law Court's affirmance of the trial court's judgment is the controlling aspect of the Memorandum of Decision because it is contained in and constitutes the appellate mandate—"The entry is: Judgment Affirmed." ECF No. 51-14. This is the operative language of the Memorandum of Decision. *C.f. In re Guardianship of Jewel M.,* 2010 ME 80, ¶ 43, 2 A.3d 301 ("On remand, a trial court must adhere to [the court's] mandate and effectuate the decision of the Court.") (quoting *State v. Patterson,* 2005 ME 55, ¶ 9, 881 A.2d 649) (internal quotation marks omitted). The "Judgment" which the memorandum of decision affirmed, was the trial court's "Judgment for the Defendants on the Plaintiff's Complaint for foreclosure." ECF No. 51-8 at 1. Accordingly, there was an adjudication on the merits and the case was not ordered dismissed as in *Greenleaf II.* As a consequence, the second element of the claim preclusion component of *res judicata* is satisfied.

## B.    Matters Presented for Decision in This Action

The third *res judicata* requirement—that the matters presented for decision in the instant action were or might have been litigated in the prior action—requires the court to "examine whether the same cause of action was before the court in the prior

case." *Wilmington Trust Co.,* 2013 ME 94, ¶ 8 (citing *In re Kaleb D.,* 2001 ME 55, ¶ 8, 769 A.2d 179).  This examination consists of determining whether the "aggregate of connected operative facts . . . were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong[.]" *Id.* (citing *Sebra v. Wentworth,* 2010 ME 21, ¶ 12, 990 A.2d 538).  *Res judicata* "may apply even where a suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case." *Id.* (quoting *Sebra,* 2010 ME 21, ¶ 12) (internal quotation marks omitted).

Nationstar argues that its claims in this case—for quiet title, breach of promissory note, breach of contract, quantum meruit, unjust enrichment, and reformation of mortgage—are based upon a continuing breach of the promissory note, as opposed to the mortgage, and thus are materially different from the claims that were at issue in the state court action, which sought to foreclose the Estate's right of redemption under the mortgage.  ECF No. 53 at 6 (citing *Johnson v. McNeil,* 2002 ME 99, ¶10, 800 A.2d 702).  Thus, according to Nationstar, it is not precluded by *res judicata* from "pursuing different rights and remedies available to it by the terms of the promissory note." *Id.* (citing *Bar Harbor Bank & Trust v. The Woods at Moody, LLC,* 2009 ME 62, ¶ 11, 974 A.2d 934).  A threshold problem with Nationstar's argument, however, is that Aurora accelerated the Note in late 2009.

Under Maine law, when a promissory note provides for a "fixed succession of installment payments, each installment becomes due and payable at the time specified for its payment and not before." *Briggs v. Briggs,* 1998 ME 120, ¶ 8, 711

A.2d 1286.  Under such circumstances, a plaintiff suing for breach of a promissory

note has a cause of action "only for the accrued installments that were due at the time

of the court's judgment" and nothing more.  *Id.* at ¶ 9.  But where, as here, the

promissory note clearly states on its face that the lender has a right to accelerate the

maturity of a debt, and an acceleration occurs, the entire amount of the loan becomes

due and payable upon default.  *Johnson v. Samson Const. Corp.,* 1997 ME 220, ¶ 8,

704 A.2d 866 ("Once [plaintiff] triggered the acceleration clause of the note and the

entire debt became due, the contract became indivisible.  The obligations to pay each

installment merged into one obligation to pay the entire balance on the note."); *see*

*also Briggs,* 1998 ME 120 at ¶ 10 n.3 (citing *Frey v. Abdo,* 441 So.2d 1383, 1385 (Miss.

1983) (other citations omitted); *see also Barron v. Boynton,* 15 A.2d 191, 193 (Me.

1940).  The Note at issue in this case required 360 equal monthly payments of

principal and interest.  *See* ECF No. 51-7 at 163-65.  The Note's acceleration clause

provided that

> [i]f I [the borrower] am in default . . . the Note Holder may require me
> to pay immediately the full amount of Principal which has not been paid
> and all the interest that I owe on that amount.  That date must be at
> least 30 days after the date on which the notice is mailed to me or
> delivered by other means.

*Id.* at 164.

Nationstar denies that it accelerated the Note.[3]  It claims that no such

allegation appeared in the State Court Complaint and that, in any event, an

---

[3] Neither party asserted or denied in their initial summary judgment papers that the Note was accelerated. *See* Defendants' Statement of Material Facts (ECF No. 51); Nationstar's Opposition to Defendants' Statement of Material Facts (ECF No. 54).  However, on July 15, 2016, I ordered the parties to respond to the following question: "Does either party deny that the promissory note at issue in this case was accelerated by Aurora Loan Services, LLC—Nationstar's predecessor in interest—in

acceleration of the Note was unnecessary because Maine's mortgage foreclosure statute does not require a mortgagee to accelerate the maturity of the unpaid balance of an obligation in order to enforce a mortgage. ECF No. 59 at 1 (quoting 14 M.R.S. § 6111). This argument is contradicted by the record, and is not supported by § 6111 in the manner that Nationstar contends.

Turning first to Nationstar's argument that the term "acceleration" does not appear in the State Court Complaint, Paragraph 12 of the complaint reflects that the amount due and payable claimed by Aurora was $246,192.29—an approximately twelve-fold increase from the $18,155.40 claimed due in the Right to Cure Notice—in the two month period between the September 2009 Notice and the November 2009 State Court Complaint. ECF No. 51-1 at 2-3, ¶ 12; *see also* ECF No. 51-7 at 58. In the same paragraph of the State Court Complaint, Aurora also explicitly stated that the principal balance due on the Note was $221,248.60. ECF No. 51-1 at 2-3, ¶ 12. Nationstar offers no explanation for how this increase could be anything other than

---

late 2009?" *See* Set Deadline dated July 15, 2016. Both parties filed supplemental briefs in response to the court's inquiry, *see* ECF No. 58; ECF No. 59. A hearing was also held on September 14, 2016, which focused specifically on this issue. *See* ECF No. 65 (Minute entry for proceedings held on September 14, 2016).

The Estate responded in its supplemental brief that the summary judgment record "establishes that the subject promissory note was accelerated in late 2009 by Aurora Loan Services, LLC following the Defendant's failure to cure a default that Plaintiff alleges began December 1, 2008," ECF No. 58 at 2, and supported its response with citations to the summary judgment record, *see id.* at 2-3. Nationstar responded in its supplemental brief that "[i]t was not alleged in the state action that the Note had been accelerated, and the Law Court has made it clear that a Note need not even be enforceable in a foreclosure civil action[,]" and denied that the Note was accelerated. ECF 59 at 1-2. Nationstar did not support its contention that the note was not accelerated, either in its supplemental brief or at the September 14 hearing, with a reference to admissible evidence contained in the summary judgment record. *See* ECF No. 59. Nor has Nationstar offered a plausible explanation for why its November 2009 State Court Complaint would have sought a judgment in the amount of $246,192.29 if the note had not been accelerated, which amount exceeds the $18,155.40 claimed due in the Right to Cure Notice as well as the original amount of the $225,000 mortgage loan.

an acceleration of the Note, which, when read together with its allegation that the Estate was in default on both the mortgage and the Note, establishes that the state court action was an action for the accelerated debt.  *Samson,* 1997 ME 220, ¶ 8.[4]

Nationstar separately contends that acceleration of the Note was unnecessary under § 6111 of Maine's mortgage foreclosure statute, 14 M.R.S.A. § 6101-6326 (2016).  ECF No. 59 at 1.  While § 6111 does not require the acceleration of the promissory note in order for a mortgage foreclosure to proceed, neither does it proscribe it.  *See* 14 M.R.S.A. § 6111(1).[5]  Thus, Nationstar's reliance on § 6111 is inapposite to whether the Note was accelerated.

Accordingly, for purposes of the Estate's summary judgment motion, I treat as undisputed the fact that the Note was accelerated as of the filing of the November 2009 State Court Complaint.  *See* Fed. R. Civ. P. 56(e).  While Nationstar's overriding argument that Maine law permits a mortgagee to bring a civil foreclosure action separately from an action on the related promissory note is correct, *see Johnson v. McNeil,* 2002 ME 99, ¶ 9, 800 A.2d 702, this principle does not preclude the application of *res judicata*.  Nationstar's claims arising under the Note could have been presented to and decided by the Biddeford District Court along with its claim

---

[4] For this reason, Nationstar's claim is factually distinguishable from *Pushard v. Bank of Am., N A.,* 2016 WL 3509467 (Me. B.C.D., Mar. 15, 2016), in which the court found that "no acceleration of payment on [the] note has occurred."  2016 WL 3509467, at *5.

[5] 14 M.R.S.A. § 6111(1) states, in pertinent part, as follows:

> [T]he mortgagee may not accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any required payment . . . until at least 35 days after the date that written notice . . . is given by the mortgagee to the mortgagor and any cosigner against whom the mortgagee is enforcing the obligation secured by the mortgage[.]

for foreclosure.[6]  *See Wilmington Trust Co.,* 2013 ME 94, ¶ 8; *see also Sebra,* 2010 ME

21, ¶¶ 12, 13; *Portland Water Dist. v. Town of Standish,* 2008 ME 23, ¶ 8, 940 A.2d

1097.

Finally, Nationstar's reliance on *Bar Harbor Bank & Trust,* 2009 ME 62, ¶ 11,

974 A.2d 934, does not support its opposition to the application of *res judicata* in this

case.  The plaintiff in *Bar Harbor Bank & Trust,* unlike Nationstar, elected to

foreclose on the mortgaged property by power of sale pursuant to 14 M.R.S.A. § 6203-

A (2008) and then filed a complaint alleging breach of contract.  *See* 2009 ME 62, ¶ 3.

The Maine Law Court concluded that the bank's election to seek a foreclosure by sale

"did not . . . extinguish its claim for money owed on the promissory note."  *Id.* at ¶ 11.

At no point in *Bar Harbor Bank & Trust* was a complaint for foreclosure filed and a

final judgment issued, as there was in the case that Aurora litigated against the

Estate before the Biddeford District Court.  *See id.*

For the foregoing reasons, I conclude that the matters presented for decision

in the instant action were or might have been litigated in the prior action, and that

the third element of the claim preclusion component of *res judicata* is satisfied.

## IV. CONCLUSION

The Estate's Motion for Summary Judgment (ECF No. 50) is **GRANTED**.

Because I do not find that Nationstar exhibited the "culpable carelessness" required

to merit sanctions pursuant to Federal Rule of Civil Procedure 11, *CQ Intern. Co.,*

---

[6] In addition, the fact that Nationstar has pleaded a count for mortgage reformation in its federal complaint—a claim that was previously brought in the State Court Complaint but abandoned at trial—demonstrates that Nationstar's count for breach of the Note in its federal complaint could have also been presented and litigated in the state court action if Nationstar had elected to pursue it.

*Inc. v. Rochem Intern., Inc., USA*, 659 F.3d 53, 60 (1st Cir. 2011), the Estate's renewed

request for sanctions is **DENIED**.

> **SO ORDERED.**

> **This 3rd day of October, 2016.**

**/s/ Jon D. Levy**
**U.S. DISTRICT JUDGE**
